UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

**RAY LEON JETER #57297**                              **CASE NO. 5:19-CV-01517 SEC P**

**VERSUS**                                             **JUDGE ELIZABETH E. FOOTE**

**NURSING STAFF CADDO CORRECTIONAL**     **MAG. JUDGE KAYLA D. MCCLUSKY**
**CENTER**

### REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District court, is a motion to confirm a default judgment filed by *pro se* plaintiff, Ray Leon Jeter ("Jeter"), as to the defendants Moniece Brossette and Darrell Evans. [doc. # 38]. A hearing on the motion to confirm default judgment was conducted on July 13, 2021. [doc. # 51]. For the following reasons, it is recommended that the motion be GRANTED IN PART and DENIED IN PART as described below. It is further recommended that Plaintiff's remaining claims against Unknown Officer and Nursing Staff Caddo Correctional Center be DISMISSED WITHOUT PREJUDICE.

### Background

Plaintiff Ray Leon Jeter, a former prisoner at Caddo Correctional Center ("CCC") proceeding pro se, filed this proceeding on or about November 25, 2019, under 42 U.S.C. § 1983. [doc. # 1]. He names Darrell Evans and Moniece Brossette as defendants. Plaintiff claims that, on October 4, 2019, nurses at CCC would not allow him to wear his tinted eyeglasses/sunglasses, even though he told them that could not see "into any type of lights" without his glasses, that his impaired vision was why he was disabled, and that his vision had been impaired since 1994. [doc. # 1, p. 3]. He instructed the nurses to call LSU Medical Health

Center, which had records to verify that he required dark eyeglasses to see. [doc. # 1, p. 3]. He alleges, however, that the nurses did not call the health center. [doc. # 1, p. 4].

Plaintiff is unable to "see in lights" without his dark glasses. [doc. # 1, p. 4]. He has a "carnel (sic) scar across his pupils, which causes severe sensitivity to light." [doc. # 17, p. 1]. Without his glasses, he "is unable to see or walk unassisted." [doc. # 17, p. 1]. At CCC, he "would have to shield [his] eyes with a towel when exiting [his] cell just to be able to walk without running into walls or other inmates." [doc. # 17, p. 2]. He alleges further:

> I was confined to my cell for (28) days and forced to miss multiple meals because the bright lights burned my eyes in [sic] this is very painful. By being confined to my cell I was unable to receive proper nutrition causing other health issues. I was also threatened by various housing unit deputies with lockdown for shielding my eyes.

[doc. # 17, p. 2]. Plaintiff's eyes hurt and "burned because of the bright lights." [doc. # 17, p. 4]. He also ran into a concrete pillar. [doc. # 17, p. 4]. He seeks $50,000.00, and he asks the Court to (1) hold "the responsible parties responsible for their gross misconduct]" and (2) "force C.C.C. to adhere to the medical standards." [doc. # 17, p. 5].

On July 31, 2020, service was made on Moniece Brossette and Darrell Evans. [doc. # 29]. On October 26, 2020, Jeter moved for entry of default against Defendants Darrell Evans and Moniece Brossette for failing to plead or otherwise defend. [doc. # 33]. Because Defendants Evans and Brossette have failed to plead or otherwise defend, the Clerk of Court entered default pursuant to Federal Rule of Civil Procedure 55. [doc. #s 34; 35].

Notice was mailed to Brossette and Evans at the addresses where they were served, but the mail was returned as undeliverable. On December 10, 2020, Plaintiff moved for default

judgment against Brossette and Evans. [doc. # 38]. On July 13, 2021, a hearing on the motion for default judgment was conducted. Accordingly, this matter is ripe.

## Law and Analysis

A defendant's default does not automatically warrant the entry of a default judgment. *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200 (5th Cir. 1975). By their default, the defendants admit the well-pleaded allegations of fact in the plaintiff's complaint. *Id.* (citing *Ohio Central Railroad Company v. Central Trust Company of New York*, 133 U.S. 83 (1889)). "[A] default judgment may be lawfully entered only 'according to what is proper to be decreed upon the statements of the bill, assumed to be true,'" *Id.* (quoting *Thomson v. Wooster*, 114 U.S. 104, 113 (1885)). Moreover, "[c]onduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H,Inc.*, 967 F.2d 194, 205 (5th Cir. 1992). In assessing the defaulting defendants' liability in this *pro se* § 1983 claim, the court also relies upon plaintiff's sworn testimony given at his hearing on July 13, 2021.

To establish liability, a plaintiff must "show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). "Deliberate indifference 'is an extremely high standard to meet.'" *Id.* at 346. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not, is insufficient to show deliberate indifference." *Domino*, 239 F.3d at 756.

Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 459 (5th Cir. 2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). However, prisoners are not entitled to the "best medical care money can buy." *See Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981). "[T]o maintain a viable claim for delayed medical treatment there must have been deliberate indifference, which results in harm." *Mendoza v. Lynaugh,* 989 F.2d 191, 193 (5th Cir. 1993). A one-month delay in addressing a prisoner's known medical needs may demonstrate deliberate indifference. *See Bradley v. Puckett*, 157 F.3d 1022, 1025-26 (5th Cir. 1998) (prison officials failed to provide prisoner with regular bathing schedule at clinic). "Deliberate indifference" in this context means that: (1) the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) they actually drew that inference; and (3) their response indicated that they subjectively intended that harm occur. *Jackson v. Morehouse Nursing Staff,* No. CIVA 08-1324, 2009 WL 1220487, at *1 (W.D. La. Apr. 7, 2009), r*eport and recommendation adopted*, No. CIVA 08-1324, 2009 WL 1220486 (W.D. La. May 4, 2009).

**A.**     **Injunctive Relief**

Jeter asserted a claim for injunctive relief. However, as he is no longer in custody, his claim for injunctive relief is moot. *See Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988) (citations omitted). Thus, to the extent that Jeter seeks injunctive relief, it is recommended that this claim be DENIED.

**B.      Damages**

The Court shall now address Jeter's claim for $50,000 in damages against each of the Defendants.

**1. Brossette**

Jeter alleges that Brossette did not allow him to wear his dark-tinted glasses that he needs to be able to see, as his eyes are very sensitive to light. *See* [doc. #s 1, 17]. At the hearing, Jeter testified that he has an eye injury, corneal scars, from in incident that occurred in prison in 1994.[1]

Upon his arrest in 2019, he was taken to CCC where a nurse later identified as Brossette confiscated his dark-tinted glasses. Jeter testified that later the Captain gave him permission to wear his glasses and returned the glasses to him. However, Brossette confiscated the glasses again, ignoring Jeter's assertion that the Captain had given him permission to wear them. Jeter asked to see a doctor and asked Brossette to obtain his medical records from LSU. Instead, Brossette obtained records only from Jeter's optometrist, who did not treat him for his light sensitivity condition. Brossette also allegedly did not reach out to the Captain to corroborate Jeter's assertion that he had permission to wear the dark glasses.

Jeter testified that, for twenty-eight days, he was without his glasses and could not see in the bright lights of the prison. Officers did not allow Jeter's fellow inmates to help him navigate to the cafeteria and did not allow him to cover his face with a towel to filter the bright lights. Jeter ran into a pillar trying to navigate to the cafeteria and did not try again. To replace the

---

[1] Jeter explained that he was assigned to cut wood and that, while performing the assigned task, wood shavings flew into his eyes. Although he was seen by a doctor, he was told that there was nothing they could do. He maintains that he has had extreme light sensitivity since that time.

missed meals from the cafeteria, Jeter was forced to spend his own money buying snacks from the commissary, either directly from the cart that came to his cell and by sending money with other inmates to bring him snacks. He spent approximately $100 per week on replacement food.

After twenty-eight days, a sergeant returned Jeter's glasses. Brossette allegedly tried to take the glasses again, and Jeter put in a sick call to see a doctor for his light sensitivity condition. Between October 2019 and March 2020, despite his requests, Jeter was not permitted to see the doctor about his eye condition and need for dark glasses. Jeter filed an ARP regarding Brossette's confiscation of his glasses and denial of his request to see a doctor and was told verbally that the issue had been resolved and his ARP denied at the second step.

At the hearing, Jeter presented his state photo identification card to the court, showing that even in his official state ID card, he is allowed to wear the dark glasses. Further, Jeter alleges that he had an eye examination to get social security and disability for his light sensitivity condition, of which the prison has a record. Jeter tried to obtain these records, but he could not afford them and was told it would take six months to receive them. In addition, an officer vouched for the legitimacy of Jeter's eye condition, having known about Jeter's condition from previous periods of incarceration, but Brossette still confiscated the glasses.

Based on the allegations, the Court finds that Brossette did act with deliberate indifference towards Jeter's eye condition by confiscating his glasses not once, but several times. Brossette was aware that Jeter claimed to need his glasses to see and to avoid excruciating pain due to light sensitivity, yet she refused to investigate into Jeter's claims whatsoever. Instead, she simply took the glasses and refused to inquire any further even in the face of compelling evidence Jeter was telling the truth about needing dark glasses. Brossette did not contact the appropriate doctor at LSU, willfully ignored the other evidence presented to her by Jeter, and

ignored the officer that vouched for the legitimacy of Jeter's eye condition. Brossette's refusal to even attempt to verify Jeter's need of eyeglasses after a prison official returned the glasses that she had confiscated amounts to deliberate indifference. She knew Jeter claimed to need dark glasses to see and to not be in pain, and her refusal to take any steps to verify this claim indicates that she subjectively intended for Jeter to be harmed.

The purpose of an award of damages in a § 1983 claim is to compensate the plaintiff for the injuries caused by the deprivation of his constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 254 (1978). The rules governing damages developed by the common law of torts provide the appropriate starting point in a § 1983 damages analysis. *Id.* at 257–58. Compensatory damages may include out-of-pocket losses as well as mental anguish and suffering. *Memphis Community School District v. Stachura*, 477 U.S. 299, 307 (1986). Damages for pain and suffering may also be awarded under § 1983. *Jones v. Conner*, 233 F.3d 574 (5th Cir. 2000) (unpublished) (citing *Thompkins v. Belt*, 828 F.2d 298, 301–02 (5th Cir. 1987).

Applying these standards, it is recommended that Jeter be awarded $400 for having to buy food from the commissary. Since he could not go to the dining hall for a month because of pain in his eyes, and the guards did not allow Jeter to use a towel or other item to shield his eyes in place of the glasses Brossette confiscated, this out-of-pocket cost is directly attributable to Brossette's deliberate indifference to Jeter's eye condition.

Moreover, it is recommended that Jeter be awarded $3000 for the physical pain and suffering he experienced when his previously-injured eyes were exposed to bright lights for the month-long period that he was not allowed to wear his dark glasses. *See Leighow v. Crump*, 2006-0642 (La. App. 1 Cir. 3/23/07); 960 So. 2d 122 (awarding $3,500 for aggravation of existing injury causing vertigo); *Hebert v. National Union Ins. Co.*, 567 So. 2d 788 (La. App. 3

Cir. 1990)(awarding $6,500 for ringing in ears, treatment over several months, and residual complaints); *Mack v. Imperial Fire and Cas. Ins. Co.*, 2014-0597 (La. App. 1 Cir. 11/17/14); 167 So. 3d 691(awarding $500 for a corneal abrasion that resolved within two months of the accident).

Finally, it is recommended that accessible costs shall be awarded along with post-judgment interest.[2] A party need not prevail on all issues to justify an award of costs. S*tudiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir. 1983). Jeter shall file a bill of costs (using Form AO 133, a copy of which will be attached to this Report and Recommendation), together with a supporting memorandum, with the Clerk of Court, in accordance with the procedures set forth in Local Rule 54.

2. **Evans**

Jeter also asserted claims against testified that Evans, the male nurse wrote down his information the first time he visited medical.  However, Jeter admitted at the hearing that Evans did not take his glasses or participate in the decision to take his glasses. He stated no facts from which the court could reasonably find Evans liable for deliberate indifference to Jeter's medical needs or any other violation of his civil rights. Accordingly, it is recommended that the motion for default judgment against Evans be DENIED and the claims against him dismissed with prejudice.

3. **Unknown Officer**

---

[2] Post-judgment interest on money judgments recovered in federal district court, including diversity cases, is governed by 28 U.S.C. § 1961(a). *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir.1991) (citing *NisshoBIwai Co. v. Occidental Crude Sales*, 848 F.2d 613, 622 (5th Cir.1988)).  Post-judgment interest accrues from the entry of judgment until the judgment is satisfied.

Under Federal Rule of Civil Procedure 4(m), when service is not made on a defendant within 120 days after filing of the complaint, the court may, after notice to the plaintiff, dismiss the action as to that defendant without prejudice or instruct the plaintiff to effect service within a specified time. *Ham v. Ward*, No. CIV.A.3-97-CV-3191-L, 1999 WL 977756, at *4 (N.D. Tex. Oct. 26, 1999). As of this date, almost 21 months after this suit was initially filed, Jeter has not served or identified this "unknown" officer. He has not requested an extension of time to identify and serve this "unknown" officer or notified the clerk that he wishes to proceed with the issuance of service on them. *See id*. Since Jeter has failed to effect service as required within 120 days on the "unknown" officer and is on notice of the consequences for failure to serve, the undersigned recommends that this action should be dismissed against the unknown officer without prejudice pursuant to FED. R. CIV. P. 4(m).[3]

**4. Nursing Staff Caddo Correctional Center**

At the hearing, Jeter testified that only two nursing staff that were present when his glasses were taken. Further, CCC confirmed that only two nursing staff were present at the time of the incident. [doc. # 24]. There was a male nurse that wrote down his information, Evans, and there was a female nurse who took his glasses, Brosette. Though 21 months have passed since the filing of this suit, Jeter did not name any other individuals or otherwise attempt to serve the Nursing Staff of Caddo Correctional Center. Notably, the "Nursing Staff Caddo Correctional Center" is not a juridical entity capable of being sued. Rather, Jeter would have to effect service as required within 120 days on a member of the nursing staff of Caddo Correctional Center. Aside from Brossette and Evans, Jeter failed to do so, and he is on notice of the consequences for

---

[3] This report and recommendation shall serve as notice to Plaintiff that the Court intends dismissal of the Unknown Officer under FED. R. CIV. P. 4(m) for failure to serve. Plaintiff can object to the recommendation within the provided period for objections.

failure to serve. Therefore, the undersigned recommends that this action should be dismissed against the Nursing Staff of Caddo Correctional Center without prejudice pursuant to FED. R. CIV. P. 4(m).[4]

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Jeter's motion for default judgment against Moniece Brossette be GRANTED and Jeter be awarded $3,400 in compensatory damages, along with costs and post-judgment interest.

IT IS FURTHER RECOMMENDED that Jeter's motion for default judgment against Darrell Evans be DENIED, and his claims against Evans be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Jeter's claims against Unknown Officer be DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER RECOMMENDED that Jeter's claims against the Nursing Staff of Caddo Parish be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. '636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any

---

[4] This report and recommendation shall serve as notice to Plaintiff that the Court intends dismissal of the remaining Nursing Staff of Caddo Correctional Center under FED. R. CIV. P. 4(m) for failure to serve. Plaintiff can object to the recommendation within the provided period for objections.

objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before she makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 13th day of August, 2021.

_____
KAYLA D. MCCLUSKY
UNITED STATES MAGISTRATE JUDGE